PER CURIAM.
I. Overview
After a great deal of judicial labor was focused on this case, but before this opinion was released, the Appellant filed a notice of voluntary dismissal. Because we believe that this case involves an issue of great public importance, we have decided not to dismiss this ease and instead to' release an opinion explaining our decision. We consider the issue presented in this case — the role the internet plays in a specific and general jurisdiction analysis — to be of great public importance because it involves a confusing area of the law that is mainly scattered across the federal courts and has not been addressed head-on by a Florida. court. Further, because of the ever-increasing role of technology and the internet in commerce, we believe that issues relating to jurisdiction and the internet will only increase over time. Therefore, we believe it is important to address this at the earliest opportunity to provide uniformity and guidance to Florida courts and would-be litigants.
We recognize that retaining jurisdiction over an appeal after it has been voluntarily dismissed is rare, but it has occurred under appropriate circumstances. See State v. Schopp, 653 So.2d 1016, 1018 (Fla.1995) (holding that an appellate court has the discretion not to dismiss an appeal after a notice of voluntary dismissal has been filed, which is “particularly true where ... the ease presents a question of public importance and substantial judicial labor has been expended .... ”); see, e.g., Bell v. U.S.B. Acquisition Co., 734 So.2d 403, 404 n. 1 (Fla.1999) (“As we have done in the *249 past, we exercise our discretion to retain jurisdiction in this case because we consider this issue to be of great public importance.”); Brown v. McNeil, 22 So.3d 741, 742 (Fla. 1st DCA 2009) (declining to dismiss an appeal after a voluntary dismissal); Washington v. State, 982 So.2d 1207, 1208 (Fla. 5th DCA 2008) (“A reviewing court has discretion to retain jurisdiction and proceed with the appeal even where a notice of voluntary dismissal is timely filed.”); Hammerl v. State, 779 So.2d 410, 411 n. 1 (Fla. 2d DCA 2000) (“A district court has the discretion when a timely notice of voluntary dismissal is filed to reject the appellant’s request to dismiss the appeal and to retain jurisdiction and proceed with the appeal.”).
This appeal arises from the trial court’s denial of the defendant’s motion to dismiss based on alleged lack of personal jurisdiction.
The defendant below, Frank Caiazzo, operates a sole proprietorship known as “Beatles Autographs.” Caiazzo specializes in buying, selling, and authenticating Beatles memorabilia.
The plaintiff below, American Royal Arts Corp. (“ARA”), a seller of rock-n-roll memorabilia that has several galleries in the South Florida area, entered into an agreement with one of its customers to sell a Beatles Revolver album[1] signed by all four members of the band for $14,900. The customer, in turn, sent a computerized scan of the album cover to an auction house, Cooper Owen, in England for an evaluation. The auction house then forwarded the scan to Caiazzo for his opinion. Caiazzo opined to Cooper Owen that the signatures on the album were forgeries from a southern California forgery ring. As a result, the customer informed ARA that he would not be purchasing the album.
This ultimately led to ARA’s suit against Caiazzo for (I) violation of Florida’s Deceptive and Unfair Trade Practices Act (“FDUTPA”), (II) defamation, and (III) unlawful restraint of trade under Florida’s unfair competition statute. Caiazzo filed a motion to dismiss the case alleging, among other issues, that the state of Florida did not have personal jurisdiction over ARA’s claims against him.
Judge Jeffrey Winikoff permitted limited discovery only as to the issue of jurisdiction. He also indicated that, following the limited discovery process, an evidentia-ry hearing would be necessary. Judge Jack Cox, Judge Winikoff s civil division successor, conducted the hearing after which he denied Caiazzo’s motion to dismiss, finding both specific and general personal jurisdiction over Caiazzo. The sole issue on this appeal is whether personal jurisdiction (specific, general, or both) exists' over Caiazzo.
II. A Background Review of Personal Jurisdiction in Florida
Because this case involves multiple jurisdictional issues, including both specific and general jurisdiction, constitutional due process constraints, and the role that the internet plays, a thorough review of jurisdictional jurisprudence is first in order.
In the seminal case of Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), the Florida Supreme Court set out a two-step process to determine if personal jurisdiction exists over a nonresi *250 dent defendant. A court must first determine whether sufficient facts have been alleged to bring the action within the ambit of Florida’s long-arm statute.[2] If the statute applies, the court must then determine whether there are sufficient “minimum contacts” on the part of the defendant to satisfy due process requirements.
Personal jurisdiction can exist in two forms: “specific,” in which the alleged activities or actions of the defendant are directly connected to the forum state, and “general,” in which the defendant’s connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary.
A. The First Step: Within the Ambit of Florida’s Long-Arm Statute?
As the first step in a two-step process, it must initially be determined if sufficient facts exist to confer either specific jurisdiction or general jurisdiction pursuant to Florida’s long-arm statute.
Section 48.193, Florida Statutes, is Florida’s long-arm statute and addresses both specific and general jurisdiction. The long-arm statute “bestows broad jurisdiction on Florida courts.” Internet Solutions Corp. v. Marshall, 39 So.3d 1201, 1207 (Fla.2010) (citations omitted). Section 48.193(1), which addresses specific jurisdiction, states:
Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts.
§ 48.193(1), Fla. Stat. (2007). Following this language is an enumerated list of acts that allow Florida courts to exercise specific personal jurisdiction over a defendant. For purposes of this appeal, however, only two of the enumerated acts are relevant: “[ojperating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state,” and “[c]omitting a tortious act within this state.” § 48.193(l)(a) & (b), Fla. Stats., respectively.
Section 48.193(2), addresses general jurisdiction in Florida, and states:
A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
§ 48.193(2), Fla. Stat. (2007). This court and other district courts have held “substantial and not isolated” to mean “continuous and systematic general business contact” with Florida. See, e.g., Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999); Am. Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1128 (Fla. 1st DCA 1994). In the instant case, ARA alleged both specific and general jurisdiction over Caiazzo.
B. The Due Process Second Step
The second step, the due process analysis, is “controlled by United States Supreme Court precedent interpreting the Due Process Clause [of the United States Constitution] and imposes a more restric *251 tive requirement” than the long-arm statute’s broad grant of jurisdiction. Internet Solutions, 39 So.3d at 1207 (quoting Wendt v. Horowitz, 822 So.2d 1252, 1257 (Fla.2002)). Additionally — and particularly germane to this appeal — the required due process analysis differs depending on whether it is (1) specific or (2) general jurisdiction being asserted.

Specific Jurisdiction Due Process

The United States Supreme Court, in a handful of leading cases, laid out the proper due process standard for cases involving specific jurisdiction. First, in the interest of preserving “traditional notions of fair play and substantial justice” a state may exercise specific jurisdiction only over a defendant who has certain “minimum contacts” with the state. Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This so-called “minimum contacts” rule is the “constitutional touchstone” for such jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court later clarified that the notion of minimum contacts encompasses only situations in which the defendant has “purposefully avail[ed] [himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); see also Burger King, 471 U.S. at 474-75, 105 S.Ct. 2174; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Finally, the Court has stated that simply being able to foresee a product’s arrival in the forum state will never by itself establish minimum contacts over the seller of that product. World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 580. Instead, foreseeability is relevant only when “the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” Id, This is because an entity that purposefully avails itself of the privilege of conducting activities within the forum state “has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.” Id.

General Jurisdiction Due Process

Unlike specific jurisdiction, the United States Supreme Court has rarely addressed the constitutional constraints on a court’s exercising general jurisdiction.[3] In International Shoe, a specific jurisdiction case, the Court acknowledged that in some instances in which a corporation has enough significant contacts with the forum state, jurisdiction could exist over any act, even those unrelated to its activity within the state. Int’l Shoe, 326 U.S. at 318, 66 S.Ct. 154 (“[T]here have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.”). Seven years later, in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the United States Supreme Court tackled its stance pertaining to general jurisdiction. The Court avoided any hard line test and instead opted for a vague standard in which courts look to determine whether *252 the activities of the defendant are “sufficiently substantial and of such a nature as to permit [the forum state] to entertain a cause of action against a foreign corporation, where the cause of action arose from activities entirely distinct from its activities in [that state].” Perkins, 342 U.S. at 447, 72 S.Ct. 413.
Once more, the United States Supreme Court refined this standard and addressed general jurisdiction in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Court reiterated its holding in Perkins but added that “continuous and systematic general business contacts” are necessary to satisfy due process minimum contacts under general jurisdiction.[4] Id. at 414-45. Accordingly, between International Shoe, Perkins, and Helicopteros, a showing of substantial, continuous, and systematic business contacts must be made to support general jurisdiction. Because substantial, continuous, and systematic business contacts is the standard for both subsection (2) of Florida’s long-arm statute and the due process requirement for general jurisdiction, a finding of substantial, continuous, and systematic business contacts will satisfy both the long-arm statute and the due process requirements of Helicopteros.[5] See Garris v. Thomasville-Thomas Cnty. Humane Soc’y, Inc., 941 So.2d 540, 545 (Fla. 1st DCA 2006) (‘"When ... the question whether a Florida court has ‘general’ jurisdiction over the person of a nonresident defendant arises under section 48.193(2), these separate inquiries (long-arm statute and minimum contacts) merge.”); Woods, 739 So.2d at 620 (“Because section 48.193(2) requires [the] high threshold [of substantial, continuous, and systematic business contacts], if the defendant’s activities meet the requirements of section 48.193(2), minimum contacts is also satisfied.”); Kertesz v. Net Transactions, Ltd., 635 F.Supp.2d 1339, 1345 (S.D.Fla.2009) (“The ‘substantial and not isolated activity’ requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause.... ”).
Finally, the United States Supreme Court has added to its minimum *253 contacts framework a “reasonableness” determination. Asahi Metal Indus. Co., v.Super. Ct. of Cal., Solano Cnty., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). According to the Court, an exercise of jurisdiction that is unreasonable would offend due process. To determine whether an exercise of jurisdiction is reasonable, “[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiffs interest in obtaining relief’ as well as “the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.” Id. (citation and internal quotation marks omitted). While the concept of reasonableness originated in specific jurisdiction cases — because it goes to the core of due process — it is applicable to a minimum contacts analysis in both the specific and general jurisdiction context.[6]
C. Along Comes the Internet
With the advent and ever-increasing use of the internet, both for business and personal use, what might otherwise be a straightforward jurisdictional analysis has unfortunately become frustratingly convoluted.
In 2011, no discussion of long-arm jurisdiction jurisprudence would be com-píete without a discussion on the internet’s effect on constitutional due process constraints including an analysis of the “passive” and “active” website distinction espoused in the seminal Zippo case arising out of Pennsylvania’s western district.[7] Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997).
D. Zippo’s Spectrum of Interactivity
In Zippo, the court enunciated a sliding scale test for determining whether to assert jurisdiction over a nonresident defendant in the internet context. This sliding scale test looks to a website’s characteristics and places it somewhere along a spectrum of interactivity. On one end of the spectrum is a “passive” website in which “a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.” Zippo, 952 F.Supp. at 1124. On the other end of the spectrum are “situations where a defendant clearly does business over the Internet.” Id. Finally, in the middle is the grey area where “a user can exchange information with the host computer,” which requires an examination of “the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.” Id. While a clear majority of federal courts has adopted the Zippo analytical framework,[8] Florida never has.
*254 In Renaissance Health Publishing, LLC v. Resveratrol Partners, LLC, 982 So.2d 739, 742 (Fla. 4th DCA 2008), a specific jurisdiction case, this court, in its minimum contacts analysis, cited to Zippo, stating, “An interactive website which allows a defendant to enter into contracts to sell products to Florida residents, and which involves the knowing and repeated transmission of computer files over the [I]nternet, may support a finding of personal jurisdiction.” Id. (emphasis added) (alterations removed and internal quotation marks omitted). While this may seem like an adoption of the Zippo sliding scale, a close comparison of the two cases reveals that it is not. In Zippo, the website at issue occupied the end of the jurisdictional spectrum in which jurisdiction is proper without further analysis. In other words, according to Zippo, a website which “allows a defendant to enter into contracts to sell products to Florida residents” and involves “the knowing and repeated transmission of computer files over the internet” ipso facto leads to a finding of jurisdiction. This court, however, went on to look to the actual level of sales the defendant made to Florida residents and the nature of the alleged wrongful acts and their link to Florida to determine if minimum contacts existed. Therefore, the active/passive website distinction from Zippo was not central to this court’s holding and instead merely provided some analytical assistance. See also Westwind Limousine, Inc. v. Shorter, 932 So.2d 571, 575 n. 7 (Fla. 5th DCA 2006) (noting in a specific jurisdiction case, as dicta in a footnote, that posting a passive website by itself does not constitute soliciting business in Florida or transacting business in Florida because it does not demonstrate any effort on the part of the defendant to target Florida or purposefully avail itself of the benefits of Florida’s laws).
In Internet Solutions, 39 So.3d at 1203, the Florida Supreme Court addressed the type of internet activity which falls under the “tortious act” section of Florida’s long-arm statute. See § 48.193(1)(b), Fla. Stat. (2007). After reviewing this court’s analysis in Renaissance Health and the few federal district courts in Florida that have addressed this issue, the supreme court noted that “relevant case law reveals that courts interpreting Florida law in the context of the Web have applied differing approaches.” Internet Solutions, 39 So.3d at 1213. The supreme court declined to utilize an active/passive distinction and instead concluded:
By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida. When the posting is then accessed by a third party in Florida, the material has been “published” in Florida and the poster has communicated the material “into” Florida, thereby committing the tortious act of defamation within Florida.
Id. at 1215. Thus, the supreme court, when addressing the narrow question of what type of internet activity will fall under the tortious acts section of Florida’s broad long-arm statute, opted for a broad view of the internet and its reach into Florida. It should be noted, however, that the supreme court emphasized that its holding did not address minimum contacts. Id. at 1216.
No Florida court has actually adopted the Zippo factors and we are not inclined to do so either.[9] As such, we take the *255 opportunity to discuss some of the flaws inherent in a sliding scale analysis as advanced by Zippo.
E. Zippo’s Slippery Slope
While the internet’s qualities are certainly unique, it is essentially a medium for communication and interaction, much like the telephone and the mail. The United States Supreme Court created the minimum contacts test to determine if jurisdiction is constitutionally proper and no exception to this doctrine has been carved out for situations in which internet activity is part of the mix. In fact, the Supreme Court “long ago rejected the notion that personal jurisdiction might turn on ‘mechanical’ tests.” Burger King, 471 U.S. at 478, 105 S.Ct. 2174 (citation omitted). Additionally, the Supreme Court also specifically rejected “any talismanic jurisdictional formulas,” id. at 485, 105 S.Ct. 2174, which the Zippo test appears to be, and has made clear that “the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice.” Id. at 486, 105 S.Ct. 2174 (citations and internal quotation marks omitted).
In addition to Zippo’s questionable fit with Supreme Court precedent, Zippo’s actual usefulness appears to be limited. As another court has noted, in an astute critique of the limitations of Zippo:
[A] court cannot determine whether personal jurisdiction is appropriate simply by deciding whether a website is “passive” or “interactive” (assuming that websites can be readily classified into one category or the other). Even a “passive” website may support a finding of jurisdiction if the defendant used its website intentionally to harm the plaintiff in the forum state. Similarly, an “interactive” or commercial website may not be sufficient to support jurisdiction if it is not aimed at residents in the forum state. Moreover, regardless how interactive a website is, it cannot form the basis for personal jurisdiction unless a nexus exists between the website and the cause of action [for specific jurisdiction] or unless the contacts through the website are so substantial that they may be considered “systematic and continuous” for the purpose of general jurisdiction. Thus, a rigid adherence to the Zippo test is likely to lead to erroneous results.
Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F.Supp.2d 1154, 1160 (W.D.Wis.2004) (citations omitted). We believe that this characterization of Zippo’s limitation is correct.
Therefore, due to both the inappropriateness of permitting Zippo to replace traditional minimum contacts and Zippo’s practical limitations, we choose to continue to apply a traditional minimum contacts analysis in personal jurisdiction questions, whether or not the internet is involved. We note, however, that while we do not adopt the sliding scale from Zippo, determining whether a website is active or passive may be part of a minimum contacts determination. In other words, if a court, when dealing with a personal jurisdiction question, finds it helpful to categorize a website as “active” or “passive,” it may do so. But to be clear, “active” and “passive” are not talismanic jurisdictional terms; they do not provide a conclusive answer to the question of whether Florida has jurisdiction over a person.
We believe that this analytical framework which allows consideration of — but *256 does not mandate adherence to—Zippo aligns with recent dicta from the Florida Supreme Court. See Internet Solutions, 39 So.3d at 1216 n. 11 (stating, in a specific jurisdiction case, that “the issues of whether [the defendant] targeted a Florida resident, whether [the defendant] purposefully directed her post at Florida, or whether [the defendant’s] website is ‘active’ or ‘passive’ could be properly considered in the due process analysis”).
III. The Instant Case
The trial court denied Caiazzo’s motion to dismiss for lack of jurisdiction, finding (1) specific jurisdiction as to all three counts asserted against Caiazzo and (2) general jurisdiction over Caiazzo. The trial court’s order focused almost exclusively on general jurisdiction. While the trial court was correct in finding specific jurisdiction for each of the three counts, it erred in finding general jurisdiction over Caiazzo.
A trial court’s ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Renaissance Health, 982 So.2d at 741; Carib-USA Ship Lines Bahamas Ltd. v. Dorsett, 935 So.2d 1272, 1275 (Fla. 4th DCA 2006).
As previously stated, the Florida Supreme Court has articulated a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant. Venetian Salami, 554 So.2d at 502. First, the court must determine whether the complaint satisfies the requirements of Florida’s long-arm statute, section 48.193, Florida Statutes. Id. Second, if the long-arm statute applies, the court must then determine whether the complaint alleges sufficient minimum contacts to satisfy due process requirements. Id. Additionally, the supreme court has stated:
Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts.A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his [or her] position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained.

Id.

Pursuant to Florida’s long-arm statute, a nonresident defendant may be subject to specific jurisdiction under section 48.193(1) where the defendant committed any of the acts enumerated in the subsection within Florida and the cause of action arose from the act. A nonresident defendant may be subject to general jurisdiction where he or she “engaged in substantial and not isolated activity within this state.” 48.193(2), Fla. Stat. (2007). “[C]ourts are required to strictly construe the long-arm statute.” Seabra v. Intl. Specialty Imports, Inc., 869 So.2d 732, 733 (Fla. 4th DCA 2004). Additionally, a court can exercise jurisdiction only if it is “reasonable.” See Asahi Metal, 480 U.S. at 113, 107 S.Ct. 1026.
A. Specific Jurisdiction
(Section 48.193(1))
In order to determine whether Florida has specific personal jurisdiction over Caiazzo, each of the three counts must be analyzed to determine whether the requirements of the long-arm statute have been satisfied.
Counts I and III, for violation of FDUTPA and unlawful restraint on trade respectively, both satisfy the requirements of the long-arm statute. Both counts are based on Caiazzo’s overall business practices within the state and not any isolated *257 incident. These overall business practices were allegedly committed both while Caiazzo was a resident of Florida and while he was in New Jersey. The amended complaint states that “this action is based in part upon the unlawful actions of Caiazzo while he resided and transacted [his business] ... in Florida from November 2004 and December 2005.” While this jurisdictional allegation can fairly be described as “barebones,” both parties agree that Caiazzo resided in, and ran his business from, Florida from November 2004 to December 2005. This allegation falls clearly under section 48.193(l)(a), which states that Florida has jurisdiction over a person who “[o]perat[es], conduces], en-gagers] in, or carries] on a business or business venture in this state or ha[s] an office or agency in this state.” § 48.193(l)(a), Fla. Stat. (2007).
The second step of the jurisdictional analysis for these two counts looks for sufficient minimum contacts with Florida to satisfy due process requirements. The minimum contacts analysis in Renaissance Health is on point with the instant case’s minimum contacts analysis. 982 So.2d at 742. In Renaissance Health, the defendant business had posted allegedly defamatory statements on its website about a competitor business located in Florida. Id. After finding that the tortious acts subsection of the long-arm statute applied, this court performed a minimum contacts analysis, in which it found that the defendant’s sales to Florida through its website amounted to 2.4 of its overall sales and that its book sales to Florida totaled $2,101.83. Id. This court went on to-say,
Such commercial activity within Florida is sufficient to subject the defendants to jurisdiction here — where a defendant disparages a competitor’s products to enhance its own commercial sales in a state where the competitor has its corporate headquarters, the defendant could “reasonably anticipate being haled into court there.”
Id. (citations omitted).
According to the jurisdictional discovery from the instant case, Caiazzo’s website accounts for a majority of his sales. His overall sales delivered to Florida addresses from 2003-2007 were 4.35% of his total sales and amounted to approximately $100,000. Additionally, in counts I and III, Caiazzo is accused by ARA of making disparaging statements about ARA — headquartered in Florida — to enhance Caiazzo’s own commercial sales in Florida. These facts are similar enough to Renaissance Health to support a finding that Caiazzo has sufficient minimum contacts with Florida to satisfy the due process requirement of specific personal jurisdiction.
Finally, exercise of jurisdiction over Caiazzo is reasonable. The burden on Caiazzo is not particularly high in defending this case. While it may require some travel, that fact alone is not particularly unique. Additionally, Florida has a decided interest in the outcome of this case as ARA is headquartered and has multiple locations in Florida. As such, because the allegations against Caiazzo for violating FDUTPA and for unlawful restraint on trade satisfy the long-arm statute for specific personal jurisdiction and also satisfy the minimum contacts requirement, specific personal jurisdiction exists as to ARA’s FDUTPA and unlawful restraint on trade claims (counts I and III).
The trial court also has specific personal jurisdiction over count II, ARA’s defamation claim. A court has specific jurisdiction over a defendant where he or she “[c]ommit[s] a tortious act within this state.” § 48.193(l)(b), Fla. Stat. (2007). In order to commit a tortious act within this *258 state, a defendants physical presence in Florida is not required. Wendt, 822 So.2d at 1260. “[T]elephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(l)(b) if the alleged cause of action arises from the communications .... ” Id.; see also Acquadro v. Bergeron, 851 So.2d 665 (Fla.2003); Becker v. Hooshmand, 841 So.2d 561 (Fla. 4th DCA 2003).
For its defamation claim, ARA alleges in its amended complaint that Perry Cox, a colleague of Caiazzo’s, sent an email to multiple people about ARA’s lawsuit against Caiazzo. Cox sent an email to friends and colleagues in the memorabilia business to raise funds for Caiazzo’s defense of this lawsuit. ARA’s amended complaint alleges that Cox is Caiazzo’s agent. Cox, however, submitted an affidavit in which he stated that he lives in Arizona and sent the email from Arizona. He also stated unequivocally that Caiazzo had nothing to do with the email, that he did not inform Caiazzo about the email, and that he did not give Caiazzo an opportunity to review the email before he sent it. This affidavit was not refuted by ARA either with countervailing affidavits or at the evidentiary hearing. As it is unclear how Caiazzo or Florida has anything to do with Cox’s email, the trial court does not have specific personal jurisdiction based on it.
However, ARA alleges additional facts to support a defamation claim: that Caiazzo directly or through agents made defamatory statements which were published and circulated in Florida, including telephone calls made directly to ARA’s employees in South Florida. These allegations are very barebones and probably come as close to being inadequate for jurisdiction as possible without actually crossing that line. That being the case, we are nonetheless compelled to find that the allegation is sufficient to state a claim for defamation in which the defamatory statements were published and circulated in Florida; therefore, this defamation allegation falls under Florida’s long-arm statute. Additionally, the minimum contacts analysis is essentially the same here as it was for counts I and III. Briefly, 4.35% of Caiazzo’s business originated in Florida, and the allegedly defamatory statements were targeted into Florida, at a competitor’s business headquartered in Florida, with the alleged purpose to damage that competitor’s reputation and business operations. Based upon these allegations, Caiazzo could reasonably anticipate being haled into a Florida court to defend himself. Additionally, for the same reasons previously articulated for counts I and III, exercise of jurisdiction over Caiazzo is reasonable.
B. General Jurisdiction
(Section 48.193(2))
While we find specific jurisdiction over all three counts, we write here to clarify how a general jurisdiction analysis differs from a specific jurisdiction analysis and to show how the trial court’s finding of general jurisdiction constituted error.
The amended complaint does not establish general jurisdiction over Caiazzo. Pursuant to Florida’s long-arm statute, a nonresident defendant may be subject to general jurisdiction where he “engaged in substantial and not isolated activity within this state” regardless of whether the claim arises from that activity. 48.193(2), Fla. Stat. (2007). This standard has been interpreted by Florida courts to require a “showing of ‘continuous and systematic general business contacts’ with the forum state.” Carib-USA, 935 So.2d at 1275 (quoting Helicopteros, 466 U.S. at 416, 104 *259 S.Ct. 1868); Seabra, 869 So.2d at 784. “The continuous and systematic general business contacts sufficient to confer general jurisdiction present a much higher threshold than those contacts necessary to support specific jurisdiction under section 48.193(1).” Trs. of Columbia Univ. v. Ocean World, S.A., 12 So.3d 788, 792 (Fla. 4th DCA 2009) (emphasis added) (citation and internal quotation marks omitted). This is because “jurisdiction under section 48.193(2) does not require that a lawsuit’s cause of action arise from activity within Florida, or that there be any connection between the claim and the defendant’s Florida activities.” Id. Additionally,
Florida cases have found “continuous systematic business contacts” to confer general jurisdiction where a nonresident defendant’s activities are extensive and pervasive, in that a significant portion of the defendant’s business operations or revenue derived from established commercial relationships in the state. Such contacts have also been found where the defendant continuously solicits and procures substantial sales in Florida.
Id. at 793.
Finally, courts have found that a company’s level of business in Florida may be insufficient to constitute “continuous and systematic business activities” when only a de minimis percentage of the total sales is derived from its sales to Florida. See id. at 794 n. 2 (listing numerous cases in which general jurisdiction was not found when the percentage of sales in the forum state ranged from less than 1% to 12.9%). Of course, as we have already indicated, jurisdictional analysis does not turn on any talismanic formula or magic number, and instead requires a fact-specific inquiry into the details of the defendant’s contacts with the forum state. A large multinational corporate defendant might make less than 1% of its sales to Florida when compared to its massive global sales, but if that 1% constitutes millions of dollars of sales, thousands of transactions, or dozens of stores within Florida, obviously general jurisdiction has a high likelihood of being found. The converse is also true: a small business might make 15% of its total sales within Florida, but that might represent only a handful of actual transactions and only a few hundred dollars, which would be less likely to support a finding of general jurisdiction. Therefore, we emphasize that a “continuous and systematic business contacts” determination requires a holistic analysis of the defendant’s relationship with Florida.
The trial court found that Caiazzo’s website conferred Florida with general jurisdiction. ARA’s general jurisdiction allegations were based almost solely on Caiazzo’s website. The trial court based its finding of general jurisdiction on this court’s holding in Renaissance Health. However, Renaissance Health was a case involving specific jurisdiction and is therefore inapplicable to a general jurisdiction determination. See 982 So.2d at 741-43. The only mention of websites and personal jurisdiction in Renaissance was in the context of the due process-related minimum contacts analysis for specific jurisdiction. Id. at 742. As should be clear by now, minimum contacts for general jurisdiction is a much more demanding and necessarily different analysis than that required for specific jurisdiction.
Unfortunately, the law is severely underdeveloped and somewhat contradictory in the area of the internet and general jurisdiction.[10] However, it should be noted *260 and underscored that “[t]he mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.” Trs. of Columbia Univ., 12 So.3d at 795 (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir.2005)). To hold otherwise, as other courts have suggested, would essentially upend traditional notions of jurisdiction and “render any individual or entity that created ... a web site subject to personal jurisdiction” for virtually any matter. Dagesse v. Plant Hotel N.V., 113 F.Supp.2d 211, 221 (D.N.H.2000). One scholar has even warned that to find that internet activities alone bestow a court with general jurisdiction would be tantamount to establishing universal jurisdiction. Dennis T. Yokoyama, You Can’t Always Use the Zippo Code: The Fallacy of a Uniform Theory of Internet Personal Jurisdiction, 54 DePaul L. Rev. 1147, 1193 (2005). Additionally, “[t]he consensus among courts that have focused explicitly on the issue is that general jurisdiction cannot be founded solely on the existence of a defendant’s internet web site.” Dagesse, 113 F.Supp.2d at 221. See also, e.g., Revell v. Lidov, 317 F.3d 467, 471 (5th Cir.2002) (“Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of [the defendant] with Texas are not in any way ‘substantial.’ ”); Hy Cite, 297 F.Supp.2d at 1161 (“Plaintiffs argument that general jurisdiction exists in this case [involving the defendant’s internet activities in the forum state] borders on the frivolous.”); Bird v. Parsons, 289 F.3d 865, 874 (6th Cir.2002) (“[T]he fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction.”). But see Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1079-80 (9th Cir.2003) (finding that internet activities alone can lead to general jurisdiction), vacated as moot, 398 F.3d 1125 (9th Cir.2005).
Finally, this court, in our only case in which we have addressed general jurisdiction based, in part, on internet activity, found that the alleged activities did not rise to the level necessary to be considered “substantial.” Trs. of Columbia Univ., 12 So.3d at 795. Applying the traditional “substantial, continuous, and systematic” minimum contacts requirements for general jurisdiction to the instant case easily reveals that general jurisdiction does not exist.
A brief review of the pertinent facts concerning Caiazzo’s website discloses:
• The “vast majority” of Caiazzo’s business comes from his website.
• Caiazzo lists his services and merchandise on his website.
• There is no method for direct purchase of merchandise or services through Caiazzo’s website. Rather, interested persons must click on a link to send Caiazzo an email in which they can inquire about any aspect of Caiazzo’s business.
• From 2003 to 2007, 4.35% of Caiazzo’s total sales came from Florida. The actual amount is approximately $100,000 of sales to Florida out of approximately $2,300,000 of total sales.
• No evidence was presented that Caiaz-zo specifically targeted Florida residents with his website.
*261 Given the very high requirement for general jurisdiction, it cannot be said that Caiazzo’s business contacts with Florida are substantial, continuous, or systematic. The 4.35 Florida sales figure appears to be de minimis.[11] Caiazzo’s website is of insufficient caliber to correctly find general jurisdiction over him.
In sum, the trial court erred in finding that it had general jurisdiction over Caiaz-zo based on his website, which does not solicit business from Florida, does not target Florida, and only makes 4.35 of total sales to Florida, a de minimis amount. Caiazzo’s website does not have substantial, continuous, and systematic business contacts with Florida.
IV. Conclusion
The trial court’s order was ultimately correct in concluding that it had personal jurisdiction over Caiazzo for the three counts in ARA’s complaint. However, this jurisdiction is based only on specific jurisdiction and, contrary to the trial court’s order, not on general jurisdiction. As such, the trial court’s order denying Caiaz-zo’s motion to dismiss for lack of personal jurisdiction is affirmed.

Affirmed.

HAZOURI, CIKLIN and LEVINE, JJ., concur.

. Released in 1966, Revolver contains such ground-breaking Beatles songs as "Eleanor Rigby” and "Yellow Submarine.” Although the album was initially missing several tracks on its U.S. release, in 1987 the uncut version of Revolver was released on compact disc. The Beatles: Album Guide, Rolling Stone, http://www.rollingstone.com/music/artists/the-beatles/albumguide.

. A long-arm statute is a statutory device by which a state obtains jurisdiction over certain causes of action involving parties or events (or both) outside that state. It is called a long-arm statute because it allows a state court to reach parties located outside the state and even possibly for events which occurred outside the state. In essence, it allows the state to reach its “long arm” outside the state.

. See, e.g., 16 James Wm. Moore et al., Moore’s Federal Practice ¶ 108.41 [3] (3d ed. 2005) ("Beyond Perkins and Helicópteros, the Supreme Court has offered little guidance on the issue of general jurisdiction-”).

. Perhaps unwittingly, the Court, for the first time, began to interchangeably use the term "minimum contacts” to describe the due process requirements for both specific and general personal jurisdiction, even though the acts that will constitute "minimum contacts” differ significantly depending on which type of jurisdiction (specific or general) is being asserted. Using the same term to describe two very different analyses (purposeful availment versus substantial, continuous, and systematic business contacts) has led to some confusion. Nonetheless, it is the terminology used by the United States Supreme Court and we are therefore bound to its continued albeit confusing usage.

. In Venetian Salami, the Florida Supreme Court held that Florida’s long-arm statute does not necessarily encompass constitutional due process requirements. Venetian Salami, 554 So.2d at 502 (Fla.1989). The supreme court stated:
The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts. We do recognize, however, that implicit within several of the enumerated circumstances are sufficient facts which if proven, without more, would suffice to meet the requirements of International Shoe Co.
Id. The due process requirements of International Shoe relate only to specific jurisdiction. Therefore, the supreme court’s statement that Florida's long-arm statute does not encompass due process requirements is limited to situations involving specific jurisdiction and not general jurisdiction.

. While a reasonableness determination will rarely prevent a court from exercising general jurisdiction over a defendant, primarily because the general jurisdiction inquiry is so demanding, it is not unheard of. See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 573 (2d Cir.1996) (declining to assert general jurisdiction, despite finding sufficient substantial, continuous, and systematic contacts, because it would be unreasonable, due primarily to the forum state’s not having any interest in the outcome of the case).

. Because the issue of internet and jurisdiction is underdeveloped and widely scattered across the federal courts, we cite to federal cases whose analysis we believe is on point.

. See Toys “R” Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-55 (3d Cir.2003); Gator.Com Corp. v. L.L. Bean Inc., 341 F.3d 1072, 1079 (9th Cir.2003), vacated as moot, 398 F.3d 1125 (9th Cir.2005); Lakin v. Prudential Sec., Inc., 348 F.3d 704, 711 (8th Cir.2003); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir.2002); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712-14 (4th Cir.2002); Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 513 (D.C.Cir.2002); Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir.1999); Soma Med. Int'l v. *254 Standard Chartered Bank, 196 F.3d 1292, 1296-97 (10th Cir.1999).

. We note that Zippo was a federal district court case out of Pennsylvania, the reasoning *255 of which has never been adopted by either the Eleventh Circuit Court of Appeals or the United States Supreme Court.

. While Florida courts have addressed the type of internet activity that falls under section 48.193(l)(a) (tortious acts), see Internet Solutions, 39 So.3d 1201, and the type of *260 internet activity that will constitute minimum contacts for specific jurisdiction, see Renaissance Health, 982 So.2d 739, only one Florida case has addressed the issue of websites and general jurisdiction. See Trs. of Columbia Univ., 12 So.3d 788. Much of the case law on this issue, scant as it may be, is strewn primarily across the federal courts.

. Note that our focus is not on whether Caiazzo’s website is “passive” or “active”; both of these terms only address hypothetical contacts. Instead we focus on Caiazzo's actual contacts to determine if they are "substantial, continuous, and systematic.” In Trustees of Columbia University v. Ocean World, S.A., this court addressed general jurisdiction based on internet activities and apparently did not feel it necessary to perform an active/passive determination either. 12 So.3d 788.