May, J.
Whether Florida can exercise personal jurisdiction over an Oklahoma lender, whose subject loan is secured by homestead property in Florida is the question we must decide. A creditor of the Florida resident argues the trial court erred in determining that Florida did not have personal jurisdiction over the Oklahoma lender. We agree and reverse.
The creditor, Wells Fargo Equipment Finance, obtained a $7,200,000 judgment against an individual (“debtor”) in a dispute arising in Florida. The debtor lives in, and claims homestead on, his Florida home. The judgment was recorded in August 2014, in Florida.
After domesticating its judgment in Oklahoma, the creditor served a post-judgment garnishment summons on the lender in connection with debtor’s accounts at the lender. The lender is an Oklahoma corporation with its principal place of business in Edmond, Oklahoma. It is not in the business of making loans to residents of states other than Oklahoma.
In its answer, the lender indicated that the debtor is also indebted to the lender, and the debt is evidenced by a promissory note and security agreement dated June 7, 2013. The lender holds a “first security interest against” the accounts and stock certificates of the debtor.
When attempting to collect on the judgment against the debtor, the creditor learned that the lender loaned three million dollars to the debtor, who is a significant investor in lender’s corporation, and secured the loan with collateral valued at six million dollars. The collateral includes liens against several of the debtor’s deposit accounts, his stock in the lender’s Bank Group, and his unencumbered homestead property located in Jupiter, Florida. The Florida property serves as the primary security to provide collateral protection; but, according to the lender’s chief lending officer, the stocks and deposit accounts were included as main sources of repayment.
The lender held the liens as a result of a loan it made to the debtor in June 2013, one year before the creditor obtained its judgment. The lender was aware of the dispute concerning a multi-million dollar jet between the creditor and debtor when it issued the loan, but it did not know the magnitude of the dispute or that a legal action had been filed. The lender also knew the debtor was in default on a multimillion dollar loan with a second creditor, First Fidelity Bank.
After discovering the loan history, the creditor initiated proceedings supplementary by filing a complaint against the lender, alleging fraudulent transfers of certain stock certificates and bank accounts, and that the lender encumbered nearly all of *674 the debtor’s unencumbered property in exchange for a loan .of half the value of the security interest transferred, with, the intent to defraud creditors. The creditor asserted the trial court had personal jurisdiction over the lender under section 48.193, Florida Statutes (2014), and the lender conducted business in Florida by making loans against the debtor’s real property located here.
The lender moved to dismiss the original complaint. At the hearing on the motion, creditor’s counsel explained that the mortgage facilitated the lender’s willingness to loan money to the debtor. Without the mortgage, the creditor would be able to seize the debtor’s bank stock and would not have a fraudulent transfer action against the lender. The court responded that the creditor needed to amend its complaint to make it more apparent that the Florida. property collateralizing the loan formed a substantial nexus to Florida.
The judge opined that, in his view, pleading in.this vein would “pass muster” for personal jurisdiction. In its amended complaint, the creditor alleged jurisdiction was proper under sections 48.193(l)(a)l. and 3., Florida Statutes, by canning on business in Florida and holding a lien on the debtor’s real property in Florida.
The lender filed a second motion to dismiss arguing the court lacked jurisdiction because the lender does not have sufficient minimum contacts with Florida to satisfy constitutional due process requirements. The lender filed an affidavit by its chief lending officer,-stating that it is a foreign entity that is not registered or licensed to do business in Florida, does not maintain a mailing address, telephone listing, or bank account in Florida, has never had employees, officers, agents, or other, representatives located in Florida, and does not own property in Florida.
The lender further asserted that it has never opened a bank account for a Florida resident other than for the debtor, it' has no outstanding loans to a Florida resident, and had only made, two loans secured by Florida property, both to Oklahoma residents. . The lender had. three customers that moved to Florida after opening their respective.,accounts in Oklahoma, one of which is the debtor.
At the hearing on the lender’s second motion to dismiss, the creditor clarified that section 48.193(l)(a)3. “was the provision that [it was] really traveling under” because the lender owned, used] or possessed a lien on real property within Florida. The court granted the lender’s motion to dismiss, finding no direct tie or nexus to Florida because the acts' that gave rise to the creditor’s 'cause "of action were all allegedly committed in Oklahoma.- The court described the residence in Jupiter as “tangential” to the cause of action. -The court only addressed the long-arm statute and did not address minimum contacts.
From this order, the creditor appeals.
The creditor argues the court erred by granting the motion to dismiss for lack of personal jurisdiction because it established jurisdiction pursuant - to' section 48,193(l)(a)3, by showing that without the Florida mortgage] there would be no loan and no reason for proceeding with proceedings supplementary. The lender responds the court did hot err by dismissing the case because there was no direct affiliation, nexus, or substantial connection between the creditor’s claims and the mortgage the lender holds.
The creditor replies that the lender mis-characterizes the claims because the creditor is seeking to avoid the mortgage lien on the Florida homestead; therefore, a nexus exists. It further replies that it is not requesting any relief against exempt property, but rather seeks to set aside the lender’s security interests created by its loan transaction with the debtor.
*675 We have de novo review of dismissal orders based on a lack of personal jurisdiction. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla. 2002).
Personal jurisdiction can exist in two forms: specific, in which the defendant’s actions are directly connected to the forum state; and general, in which “the defendant’s connection with- the forum state is so substantial that no.specific or enumerated relationship between the alleged wrongful actions and the state is necessary.” Caiazzo v. American Royal Arts Comp., 73 So.3d 245, 250 (Fla. 4th DCA 2011). The creditor ■ limits its argument to specific jurisdiction only.
Specific jurisdiction over a non-resident defendant exists where: (1) the defendant’s conduct in Florida falls within the enumerated acts ■ listed in Florida’s long-arm statute, section 48.193(l)(a); and (2) where the defendant' has sufficient minimum contacts to satisfy federal due process-requirements. Caiazzo, 73 So.3d at 256.
Section 48.193(l)(a) lists enumerated acts allowing'a Florida court to exercise specific jurisdiction over a defendant if minimum contacts also exist. The non-r¿si-dent defendant’s actions fall within the statute if it does one of the enumerated acts and the plaintiffs claim “arose from” that act. Caiazzo, 73 So.3d at 256. For a plaintiffs claim to arise from the defendant’s actions, there must be., a “direct affiliation, nexus, or .substantial connection” between the basis for the plaintiffs claim and the defendant’s activity in the state. Ferguson v. Estate of Campana, 47 So.3d 838, 842 (Fla. 3d DCA 2010).
Here, the creditor alleges jurisdiction exists over the lender, pursuant to section 48.193(l)(a)3., because the creditor’s cause of action arose from the lender “owning, using, possessing, or holding a mortgage or other lien on [ ] real property within [Florida].” § 48.193(l)(a)3. However, this portion of Florida’s long-arm statute can only be satisfied if: (1) the lender holds a mortgage on Florida real property; and (2) the creditor’s claim “arose from” the mortgage. Caiazzo, 73 So.3d at 256. It is undisputed the lender holds a mortgage on real property in Florida. The issue .is whether the creditor’s claim arose from the mortgage.
Although the creditor seeks the stock and accounts held by the lender in Oklahoma, the creditor seeks .to avoid the loan and liens on the Florida residence, the stocks and -the accounts on a claim of fraudulent transfer. The lender admitted through sworn testimony by its chief lending officer that its three million dollar loan to the debtor was “based on the home in Florida” as collateral, while the bank stock and accounts “went hand-in-hand” as repayment. According to the lender, the loan could not have been made “just based on the. collateral” in the house; the stock and accounts in the lender were needed as a “package deal” for the loan.
Without the mortgage, the lender would not have made the loan that the creditor alleges was fraudulently transferred. At oral argument, the lender admits it requested the lien on the Florida property to secure the loan. The mortgage, stock, and accounts all make up the loan in dispute; without ■ the mortgage • 'that enabled the loan, there would be no lien on the stock and accounts because they were a “package deal” in securing the loan. - •
The debtor would not have initiated proceedings supplementary but for the .over-collateralized loan backed by the mortgage on the Florida property. Because the mortgage is the mechanism that facilitated the entire transaction at issue, the mortgage is directly connected to the creditor’s cause of action and allegations that'the security interests were fraudulently transferred.
*676 Without the mortgage, the debtor’s stock and accounts in the lender would not have liens against them, and the creditor would be able to seize these assets. The lender maintains that the creditor does not seek to avoid the mortgage, but candidly admits there might be a direct affiliation if the creditor’s claims were to avoid the mortgage lien. Contrary to the lender’s assertions, the creditor’s amended complaint clearly seeks to avoid the mortgage lien:
WHEREFORE, the Judgment Creditor, Wells Fargo, seeks judgment against the Defendant, Prime Bank: (i) determining and declaring that Carballo’s grant of security interest to Prime Bank against the Jupiter Property, Stock, and Accounts, is a fraudulent transfer to Prime Bank; (ii) awarding Wells Fargo a judgment for damages against Prime Bank for the value of fraudulent transfer at the time of the transfer, or in the alternative, avoiding the fraudulent transfer. ...
Thus, the mortgage is directly connected to the creditor’s cause of action.
For this reason, this case is distinguishable from Forrest v. Forrest, 839 So.2d 839, 841 (Fla. 4th DCA 2003), and Marshall v. Marshall, 988 So.2d 644, 648 (Fla. 4th DCA 2008), in which we held Florida lacked personal jurisdiction because the claims did not arise out of the property. Here, the fraudulent transfer claim alleged in the proceedings supplementary arose directly out of the mortgaged Florida property that facilitated the over-collater-alized loan.
Because the lender’s Florida mortgage is directly related to the creditor’s claim and falls within section 48.193(l)(a)3., the creditor established jurisdiction, pursuant to Florida’s long-arm statute.[1]
Step two of the jurisdictional analysis is whether the lender had sufficient minimum contacts to satisfy due process. Caiazzo, 73 So.3d at 257. To satisfy minimum contacts, the lender’s contacts: (1) must have been related to or gave rise to the creditor’s cause of action; (2) must involve some act by which the lender “purposefully availed itself of the privilege of conducting activities within the forum”; and (3) “must be such that [it] should reasonably anticipate being haled into court there.” Corporacion Aero Angeles, S.A. v. Fernandez, 69 So.3d 295, 299 (Fla. 4th DCA 2011).
For a defendant to meet the purposeful availment requirement, he or she must do more than engage in “‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citation omitted). The lender argues that the location of the mortgaged property in Florida does not satisfy the minimum contacts test because the location of the mortgaged property was merely fortuitous. This argument misses the mark.
First, the lender’s contact in Florida, the mortgaged property, gave rise to the creditor’s fraudulent transfer claim in the proceedings supplementary. This satisfies the first element of the minimum contacts test.
Second, while an individual’s contract with an out-of-state party alone cannot automatically establish personal jurisdiction, future consequences of contracting *677 can subject a non-resident defendant to jurisdiction in the forum. Burger King, 471 U.S. at 478, 105 S.Ct. 2174. At the time of the loan, the lender knew the debtor was in dispute with creditors, including a “big loan” that was past due with First Fidelity and the dispute with the creditor and a loan involving a multi-million dollar jet. The lender also recognized the debtor lacked “any documented repayment source” for the three million dollar loan. The lender admits it asked for the mortgage on the Florida property, and would not have loaned the money without it.
These concessions combined with the twenty-four-month term of the three million dollar loan make it both reasonable and foreseeable that the lender would anticipate being haled into Florida eourt to foreclose the mortgage.
The lender also created “continuing obligations” between itself and the debtor as a resident of Florida when it retroactively extended the loan’s original maturity date of July 15, 2015 to July 15, 2017, two months after the loan became due. Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (citation omitted). This extension occurred more than a year after the $7,200,000 final judgment was entered in favor of the creditor. Thus, the lender could have reasonably anticipated being haled into Florida to foreclose on an individual struggling against other creditors seeking his assets.
By mortgaging the Florida property and extending the loan’s maturity date, the lender purposefully availed itself of conducting activities in Florida. The “quality and nature” of its relationship to the mortgaged property in Florida cannot be viewed as “random” or “fortuitous.” Id. at 480, 105 S.Ct. 2174 (citation omitted). The lender’s lien on the Florida property was deliberate and purposefully “reachfed] out beyond” Oklahoma for the purpose of securing its loan. See id. at 479, 105 S.Ct. 2174 (citation omitted).
Because the lender deliberately and repeatedly engaged in securitizing a loan with a Florida property valued at 4.7 million dollars owned by a Florida resident, it availed itself of “the privilege of conducting business” in Florida. Id. at 476, 105 S.Ct. 2174. Because its mortgage on the Florida property is shielded by the protections of Florida law, “it is presumptively not unreasonable to require [it] to submit to the burdens of litigation” in Florida as well. Id.
The creditor established compliance with the long-arm statute and the requisite minimum contacts. Florida has personal jurisdiction over the lender. We therefore reverse the dismissal order and remand the case for further proceedings.

Reversed and Remanded.

Ciklin, C.J., and Taylor, J., concur.

. The lender’s alternative argument that the Florida property is exempt homestead property is unsupported by the record on appeal. The record does not indicate if the subject property meets Florida’s requirements for homestead. As such, the lender’s argument that property cannot serve as the subject of proceedings supplementary and the fraudulent transfer claim is not germane to the analysis of personal jurisdiction.