KHOUZAM, Judge.
Stephen J. Oldock and Laurie A. Oldock appeal the circuit court’s dismissal of their personal injury lawsuit against DL & B Enterprises, Inc., based on lack of personal jurisdiction. We reverse because the circuit court has general personal jurisdiction over DL & B as provided in section 48.193(2), Florida Statutes (2005). Because we hold that jurisdiction exists under this statutory section, we do not reach the alternative question of specific personal jurisdiction under section 48.193(l)(a).
This lawsuit stems from an accident that occurred in September of 2003. Stephen J. Oldock was on DL & B’s premises in North Carolina for the purpose of inspecting produce when he was severely injured by a forklift operated by a DL & B employee. Two years later, the Oldocks filed a complaint against DL & B in the Twentieth Circuit Court in and for Collier County, Florida. DL & B moved to dismiss based on lack of personal jurisdiction, and the circuit court dismissed the case. On appeal, this court reversed and remanded for an evidentiary hearing because the affidavits filed in support of and in opposition to the motion to dismiss conflicted on juris-dictionally important facts. Oldock v. DL & B Enters., Inc., 966 So.2d 484, 485-86 (Fla. 2d DCA 2007).
*52 At the evidentiary hearing' held on remand, the following facts were established. DL & B is a North Carolina corporation, owned and operated by Doug and Linda Wilson. DL & B grows produce in North Carolina and uses sales agents or brokers to sell its produce. Beginning in 1991, DL & B used a Florida company called Six L’s as its exclusive sales agency. Mr. Oldock worked for Six L’s at the time, and he developed a good relationship with the Wilsons. When Mr. Oldock decided to leave Six L’s in 2001, the Wilsons approached him about forming a sales partnership. In 2002, they created King Farms, in which Mr. Oldock had a 50-percent ownership interest and each of the Wilsons had a 25-percent ownership interest. They incorporated King Farms in Florida but also maintained a branch sales office for the company on DL & B’s premises in North Carolina. DL & B ended its relationship with Six L’s, and King Farms became DL & B’s exclusive sales agency.
DL & B and King Farms agreed that King Farms would relocate to North Carolina during the summer growing season, as was standard industry practice. While in North Carolina, King Farms would sell DL & B’s produce to retail and grocery chains in various states, including Florida. After it had sold the produce and been paid for it, King Farms would pay DL & B for the produce. DL & B itself never shipped any produce to Florida, and King Farms purchased and took title to DL & B’s produce in North Carolina before it arranged for shipment. King Farms earned an 8 percent commission for selling the produce. Ultimately, Mr. Oldock received 4 percent of the commission and the Wilsons received 4 percent. This arrangement continued from 2002 until 2005.
In light of its original relationship with Six L’s and its later relationship with King Farms, DL & B had been doing business with Florida companies for over twenty years. During that time, DL & B had generated nearly 100 percent of its revenue from sale of its produce in various states by King Farms and Six L’s. DL & B’s gross income was $7,000,000 to $10,000,000 per year. Approximately 30 percent of DL & B’s produce was shipped into Florida by the two Florida companies.
After the evidentiary hearing, the circuit court again dismissed the case, declining to address the issue of specific jurisdiction and determining that the Oldocks had not established general jurisdiction. The Ol-docks now appeal, arguing that the circuit court erred in dismissing the case because Florida has both specific and general jurisdiction over DL <& B. As to general jurisdiction, they argue that it had been established that DL & B had continuous and systematic business contacts within Florida. DL & B responds that its business contacts with Florida were not substantial enough to establish general jurisdiction.
The circuit court’s ruling on a motion to dismiss based on lack of jurisdiction is generally a pure question of law and is thus subject to a de novo standard of review. See Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002); Dev. Corp. of Palm Beach v. WBC Constr., LLC, 925 So.2d 1156, 1158, 1160 (Fla. 4th DCA 2006). But in cases where live testimony has been presented on the issue of jurisdiction, this court must defer to the circuit court’s factual findings. Dev. Corp. of Palm Beach, 925 So.2d at 1160. Therefore, in this case, we must defer to the circuit court’s findings of fact but review its application of the law to the facts de novo.
Finding long-arm jurisdiction over a nonresident defendant requires a two-part analysis. Canale v. Rubin, 20 So.3d 463, 465 (Fla. 2d DCA 2009). First, we must determine if the requirements of Florida’s long-arm statute have been satis *53 fied. Id. Second, we must determine if the federal constitutional requirement of minimum contacts has been established. Id.
Florida’s long-arm statute provides for specific jurisdiction and general jurisdiction. See §§ 48.198(1), (2); Canale, 20 So.3d at 465. General jurisdiction may be established under Florida’s long-arm statute where a nonresident defendant engages in substantial and not isolated activities within the state, whether or not the claim arises from that activity. See § 48.198(2); Canale, 20 So.3d at 465-66. In contrast, specific jurisdiction requires a causal connection between the defendant’s activity in Florida and the plaintiff’s cause of action. See § 48.193(1); Canale, 20 So.3d at 466.
 If a nonresident defendant has initiated and maintained continuous and systematic business contacts in Florida for pecuniary gain, this fact is sufficient to establish general jurisdiction as well as to fulfill the due process requirement of minimum contacts. Am. Fin. Trading Corp. v. Bauer, 828 So.2d 1071, 1075 (Fla. 4th DCA 2002). Additionally, “a [nonresident] defendant who engages the services of brokers, jobbers, wholesalers, or distributors can be subject to jurisdiction if the defendant was engaged in a course of conduct in Florida for the purpose of realizing a pecuniary benefit.” Id. at 1074. For example, in American Financial v. Bauer, the court found that the nonresident defendant’s activity in Florida was substantial, not isolated, where he had engaged the services of a commodities investment firm located in Florida to buy and sell commodities for pecuniary gain. Id. In total, he took part in more than 120 transactions which involved over $465,000. Id. The court found that he was subject to general personal jurisdiction in Florida. Id. at 1075.
Here, the undisputed facts in the record show that for more than twenty years DL & B has been continuously and systematically initiating and maintaining exclusive business relationships with Florida companies — first Six L’s and then King Farms — to sell its produce for pecuniary gain. During that span of time, nearly 100 percent of DL & B’s revenue came from the Florida companies’ produce sales, and DL & B grossed up to $10,000,000 per year. Though the Florida companies sold produce in various states, they sold about 30 percent of the produce in Florida.
While it is true that King Farms took possession of DL & B’s produce in North Carolina before arranging for shipment and that DL & B did not sell produce directly to Florida, King Farms was a Florida corporation created by the owners of DL & B for the very purpose of selling DL & B’s produce. The owners of DL & B had a 50-percent ownership interest in King Farms, and they received one half of the 8 percent commission that King Farms earned for selling DL & B’s produce. This relationship between King Farms and DL & B persisted for approximately three years.
In light of the undisputed facts in the record, we hold that the circuit court erred by finding that it did not have general personal jurisdiction over DL & B. Because we conclude that the Oldocks established general jurisdiction, we do not reach the question of specific jurisdiction.
Reversed and remanded for further proceedings consistent with this opinion.
VILLANTI and CRENSHAW, JJ., Concur.