NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


MAGWITCH, LLC,                          )
                                        )
            Appellant,                  )
                                        )
v.                                      )        Case No. 2D15-897
                                        )
PUSSER'S WEST INDIES LIMITED, a         )
British Virgin Islands corporation, and )
CHARLES S. TOBIAS,                      )
                                        )
            Appellees.                  )
_____ )

Opinion filed September 7, 2016.

Appeal from the Circuit Court for
Hillsborough County; Mark R. Wolfe,
Judge.

Karen Cox of Bush Ross, P.A., Tampa,
for Appellant.

Christine A. Marlewski of Gray-Robinson,
P.A., Tampa, and John A. McCauley of
Venable, LLP, Baltimore, Maryland, for
Appellee Pusser's West Indies Limited.

No appearance for Appellee Charles S.
Tobias.

SILBERMAN, Judge.

        Magwitch, LLC, a New York company, seeks review of an order

dismissing with prejudice its collection action against Pusser's West Indies Limited

(PWI), a British Virgin Islands corporation.  The trial court dismissed the complaint for lack of personal jurisdiction based on a determination that PWI's business contacts with Florida were insufficient to establish general jurisdiction under Florida's long-arm statute.  We affirm.

Long-arm jurisdiction exists over a foreign corporation when (1) the requirements of section 48.193, Florida Statutes (2012), are satisfied, and (2) the corporation has sufficient minimum contacts with Florida to satisfy the federal constitutional due process requirement.  Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989).  Section 48.193 sets forth requirements for specific and general jurisdiction, either of which is sufficient to satisfy the first prong of the long-arm jurisdiction analysis.  Specific jurisdiction requires a causal connection between the plaintiff's claim and the defendant's activity in the state, but general jurisdiction does not require any such connection.  At issue herein is only general jurisdiction.

Section 48.193(2) provides for general jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise."  "Substantial and not isolated activity" is construed by Florida courts as involving contacts with Florida that are "continuous and systematic."  Wiggins v. Tigrent, Inc., 147 So. 3d 76, 85 (Fla. 2d DCA 2014) (quoting Two Worlds United v. Zylstra, 46 So. 3d 1175, 1178 (Fla. 2d DCA 2010)).  "General jurisdiction requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish."  Canale v. Rubin, 20 So. 3d 463, 466 (Fla. 2d DCA 2009).  Thus, the satisfaction of section 48.193(2) also fulfills the second prong of the long-arm jurisdiction analysis.  Wiggins, 147 So. 3d at 85.

This court conducts a de novo review of the trial court's application of the law in ruling on a motion to dismiss for lack of personal jurisdiction. Oldock v. DL&B Enters., Inc., 100 So. 3d 50, 52 (Fla. 2d DCA 2011). In cases in which the trial court has heard testimony, we must defer to the court's findings of fact. See id. In this case, the trial court made numerous jurisdictional findings of fact.

The court found that PWI is a corporation organized under the laws of the British Virgin Islands with its principal place of business, headquarters, and employees located in the British Virgin Islands. PWI's core business consists of owning and operating Caribbean-themed pubs in the British Virgin Islands, but it also sells Pusser's branded merchandise through a website that is hosted in the British Virgin Islands. PWI has never owned or operated any pubs in Florida or had any employees in Florida. It has not owned any real property in Florida or had any bank accounts in Florida. PWI's sole business contact with Florida is the use of a Florida fulfillment house to process and distribute its internet orders.

PWI has been using a fulfillment house located in Florida since 2005. Neither of the two fulfillment houses it has used since then has served as an agent of PWI or had any ownership interest in its merchandise. Revenues from internet orders amount to only 1.3% of PWI's $68,000,000 in total business revenues, and revenues from the internet sales of PWI merchandise to residents in Florida amount to only .2% of PWI's total business revenues. PWI does not target its marketing toward Florida or solicit business from Florida. While PWI registered to do business in Florida and appointed a Florida resident agent, it did so to meet its legal obligation of paying Florida

sales taxes on internet sales to residents in Florida. The only official act PWI's registered agent has taken was receiving service of process in the underlying action.

On appeal, Magwitch argues that PWI has consented to personal jurisdiction by registering to do business in Florida and appointing a Florida resident agent. Magwitch alternatively argues that PWI maintained continuous and systematic business contacts with Florida. We are not persuaded by either argument.

Magwitch first argues that PWI consented to personal jurisdiction by registering to do business in Florida and appointing a Florida resident agent. In support of this argument, Magwitch relies upon Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917), and White v. Pepsico, 568 So. 2d 886 (Fla. 1990). However, Pennsylvania Fire has yielded to the two-prong analysis for long-arm jurisdiction set forth in recent decades by the Supreme Court and adopted in Venetian Salami. See Brown v. Lockheed Martin Corp., 814 F.3d 619, 639 (2d Cir. 2016). And we find White to be inapposite because it addressed the sufficiency of service of process under section 48.081, Florida Statutes (1983), and not personal jurisdiction under section 48.193.

Magwitch alternatively argues that PWI maintained continuous and systematic business contacts with Florida by registering to do business in Florida, designating a corporate representative in Florida, and engaging in a long-term business relationship with a Florida fulfillment house. Magwitch asserts that there are additional facts regarding this relationship that were not discussed by the trial court but are compelling. According to Magwitch, a significant amount of PWI's merchandise is imported to Florida and stored in Florida at the fulfillment house. All of PWI's revenue

from internet sales comes from this merchandise, and the call center for processing orders is also located in Florida.  Further, one of the products distributed by the fulfillment house, Pusser's rum cakes, was baked in Florida by a bakery with which PWI established a relationship.  In support of its argument that these business contacts are sufficient to satisfy section 48.193(2), Magwitch relies on Oldock v. DL&B Enterprises, Inc., 100 So. 3d 50 (Fla. 2d DCA 2011).

Before addressing Oldock, we note that "Florida cases have found 'continuous systematic business contacts' to confer general jurisdiction where a nonresident defendant's activities are extensive and pervasive, in that a significant portion of the defendant's business operations or revenue derived from established commercial relationships in the state."  Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 259 (Fla. 4th DCA 2011) (quoting Trs. of Columbia Univ. v. Ocean World, S.A., 12 So. 3d 788, 793 (Fla. 4th DCA 2009)).  However, business activities resulting in Florida sales that generate "a *de minimus* percentage of the total sales" are not sufficient to meet the requirements of section 48.193(2). Id.  Additionally, the mere presence of a website in Florida does not confer general jurisdiction.  Id. at 260.

PWI's internet sales to Florida are insufficient in themselves to establish general jurisdiction.  See Caiazzo, 73 So. 3d at 260.  In Caiazzo, the Fourth District concluded that the circuit court did not have general jurisdiction over a nonresident defendant based on the defendant's internet business because the defendant "does not solicit business from Florida, does not target Florida, and only makes 4.35[%] of total sales to Florida, a *de minimus* amount."  Id. at 261.  As with the nonresident defendant in Caiazzo, PWI conducts internet sales in Florida but does not solicit business from

Florida or target Florida. Additionally, PWI's revenues from internet sales to Florida only amount to the *de minimus* amount of .2% of PWI's total business revenues.

Similarly, PWI's use of a Florida fulfillment house to process and distribute internet orders is *de minimus* in that it does not account for a significant portion of PWI's business operations or revenue. See Vos, B.V. v. Payen, 15 So. 3d 734, 738 (Fla. 3d DCA 2009). In Vos, the nonresident defendant had business contacts with three corporations operating in Florida. The defendant had entered into contracts with two of these companies for the distribution of 1,000,000 pounds of the defendant's chemicals. Id. at 735-36. The defendant did not ship any of the chemicals through Florida or its ports, but it did maintain long-distance communication with the Florida distributors to keep up its business relationships. Id. at 736. The defendant's third Florida business contact was a bank that provided the defendant a line of credit to facilitate its sales to one of the distributors.

The Third District concluded that these business contacts with Florida were *de minimus* and insufficient to establish personal jurisdiction. Id. at 737. The court explained that the defendant did not have any employees or offices in Florida, it did not own any assets or real property in Florida, it did not distribute its chemicals through or into Florida, it did not advertise in Florida, and it did not send representatives to Florida. Id. at 736-37. Instead, the Florida corporations acted as brokers for the defendant's sale of chemicals to international purchasers. Id. at 737. And the transactions with the corporations operating in Florida amounted to just .236% of the defendant's total sales. Id. at 736. Finally, the defendant's involvement in the use of

the line of credit to facilitate its sales to one of the corporations was "virtually non-existent" because it was all done by document and fund transfers.  Id. at 737.

As with the nonresident defendant in Vos, PWI does not have any employees or offices in Florida, it does not own any assets or real property in Florida, it does not target advertising to Florida, and there is no evidence it sends representatives to Florida.  While PWI does distribute all of its internet merchandise through a Florida fulfillment center, the revenue from PWI's internet sales is *de minimus* at 1.3% of PWI's total revenues.  To the extent that PWI uses a Florida call center to process internet orders and used a Florida bakery to bake its Pusser's rum cakes, those contacts still facilitate only 1.3% of PWI's total revenues.  And while PWI registered to do business in Florida and appointed a corporate representative, PWI only did so to meet its legal obligation of paying Florida sales tax for the .2% *de minimus* revenue from internet sales in Florida.  In fact, the only official act PWI's registered agent has taken was receiving service of process in this case.

We find Magwitch's reliance on Oldock to be misplaced.  In Oldock, the nonresident defendant was a North Carolina corporation that grew produce in North Carolina.  One of two Florida companies acted as the defendant's exclusive sales agent for over twenty years.  100 So. 3d at 52.  The defendant made almost 100% of its revenue from the sales made by its Florida agents.

In determining that these business contacts were sufficient to establish general jurisdiction, this court noted that "a [nonresident] defendant who engages the services of brokers, jobbers, wholesalers, or distributors can be subject to jurisdiction if the defendant was engaged in a course of conduct in Florida for the purpose of realizing

a pecuniary benefit." Id. at 53 (quoting Am. Fin. Trading Corp. v. Bauer, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002)). This court concluded that the defendant grower "has been continuously and systematically initiating and maintaining exclusive business relationships with Florida companies" for almost 100% of its revenue. Id. Additionally, the original Florida sales company and its successor sold about 30% of their produce to Florida buyers. And the successor Florida sales company was created by the defendant corporation's owners for the purpose of selling their produce.

We do not dispute that a nonresident defendant who engages the services of a Florida distributor can be subject to jurisdiction by engaging in a course of conduct in Florida for a pecuniary benefit. However, the attendant business contacts must still be extensive and pervasive. While the business contacts in Oldock met this high threshold, the business contacts in this case do not. The business revenue from the Florida contacts in Oldock accounted for almost 100% of the defendant's profits, while the revenue generated by PWI's business contacts with Florida is *de minimus* at 1.3% of PWI's total business revenues. Additionally, about 30% of the defendant's produce was sold to Florida buyers in Oldock, while the revenue from PWI's internet sales in Florida is a mere .2%. Furthermore, the defendant in Oldock created the Florida sales company for the very purpose of selling its product, but PWI does not have any ownership interest in or exclusive contract with its Florida fulfillment house.

In conclusion, PWI's business contacts with Florida were not extensive and pervasive enough to meet the high threshold required to establish continuous and systematic business contact with Florida. Therefore, we affirm the order dismissing with prejudice Magwitch's complaint against PWI for lack of personal jurisdiction.

Affirmed.


VILLANTI, C.J., and CRENSHAW, J., Concur.