CORTIÑAS, J.
 

 Adrienne Andros Ferguson, Emily J. Andros, Julia Lynn Andros, and Penelope J. Andros, each individually and on behalf of the Estate of Andrew A. Andros, John S. Richards, Abbas I. Yousef, Mirsul Investments, S.A., and Importechno International, Inc., (collectively the “Plaintiffs”) filed the underlying suit in this appeal against the Estate of Thomas J. Campa-na, Jr., NTP, Inc., Donald E. Stout, William White, Antonelli, Stout & Krauss, LLP, and Joletta Lampos
 
 [1]
 
 (collectively the “Defendants”). The Plaintiffs second amended complaint (the “Complaint”) asserted numerous causes of action against the Defendants, including breach of fiduciary duty, breach of contract, fraud, civil conspiracy, unjust enrichment, promissory estoppel, and a request for declaratory judgment. The Defendants first moved to dismiss the Complaint for failure to state a cause of action and later moved to dismiss for lack of personal jurisdiction. The trial court subsequently entered an order specifying that:
 

 Defendants’ Motion to Dismiss Plaintiffs’ Second Amended Complaint for Failure to State a Cause of Action was filed on November 6, 2008. Defendants’ Motion to Dismiss for Lack of Personal Jurisdiction was filed on November 17, 2008. As such, all jurisdiction arguments not preserved in the original motion to dismiss have been waived pursuant to Fla. R. Civ. P. § 1.140(h).
 

 
 *841
 
 The trial court further granted the motion to dismiss for lack of jurisdiction as to the Estate of Thomas J. Campana, Jr. (the “Campana Estate”) and NTP, Inc. (“NTP”) and denied the motion as to the other Defendants. The order also noted that the motion to dismiss for failure to state a cause of action would be addressed by separate order.
 
 [2]
 
 In this consolidated appeal, the Plaintiffs seek review of the dismissal for lack of jurisdiction as to the Campana Estate and NTP, and the remaining Defendants seek review of the portion of the denial of the dismissal as to them.
 

 In 1986, Andrew Andros formed Tele-find, a corporation focused on the development and operation of a nationwide paging network with its principal place of business in Coral Gables, Florida. In tandem with its paging network business, Telefind eventually began working on a “high speed protocol” for faster transfer of information via its networks. Shortly after its inception, Telefind hired Thomas J. Campana, Jr. (“Campana”) as an independent contractor. Campana eventually became a vice president at Telefind and, Plaintiffs allege, spent a significant amount of time in Florida during the approximate four-year period he was an officer of Telefind. Near in time to Campana’s hiring, Donald E. Stout (“Stout”) and the law firm Anto-nelli Stout & Krauss, P.A. (the “Firm”) were retained by Telefind to handle patent work.
 

 Telefind’s financial backing throughout its existence included funds from John Richards, Abbas Yousef and other associates who invested large sums of money via three Panamanian corporations — Mirsul Investments, S.A., Importechno International, Inc., and Flatt Morris Associates, P.A. (collectively the “Investors”). The Investors, in turn, allegedly hired William White (“White”) to safeguard their investment in Telefind. Plaintiffs allege in the Complaint and by sworn declarations that in the course of Telefind’s business, Wireless Email Technology (‘WET”) was developed, though the parties disagree as to the actual time and place of, and the parties involved in, WET’s development. Stout and the Firm filed three WET patents in 1991, and Telefind filed for bankruptcy in Florida later that same year. In 1992, Stout and the Firm filed for another three WET patents. Plaintiffs further allege that because Telefind had fallen into financially difficult times, the WET patents were registered in the name of Campana and some of his associates in an effort to protect the patents from Telefind’s creditors. This was purportedly done pursuant to oral agreements whereby Andros and the Investors would share in any resulting financial benefits and proceeds, even though the patents were not in their names.
 

 In 1992, Stout, Campana, and White incorporated NTP, a Virginia corporation, and sometime thereafter transferred the WET patents to NTP. Documents filed
 
 *842
 
 under seal in the trial court demonstrate that after receiving the patents, NTP endeavored to license their use. In 2006, NTP and Research In Motion, Inc. (“RIM”) settled a patent infringement lawsuit whereby RIM paid NTP approximately $612,000,000 (the “RIM Settlement”). By the time of the RIM Settlement, both Andros and Campana had passed away, in 2001 and 2004, respectively. The underlying litigation ensued after NTP refused to share the proceeds of the RIM Settlement with the Plaintiffs.
 

 We review the trial court’s grant and denial of the Defendants’ motion to dismiss for lack of personal jurisdiction de novo.
 
 See Wendt v. Horowitz,
 
 822 So.2d 1252 (Fla.2002). In order to determine whether personal jurisdiction exists over a non-resident defendant, a trial court generally conducts a two-step inquiry.
 
 Id.
 
 First, the trial court must determine whether sufficient jurisdictional facts are alleged in the complaint such that action falls within the ambit of Florida’s long-arm statute, section 48.193, Florida Statutes.
 
 Id.
 
 at 1256;
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499, 502 (Fla.1989). In doing so, the court must strictly construe the statute in favor of the non-resident defendants.
 
 Blumberg v. Steve Weiss & Co.,
 
 922 So.2d 361, 363 (Fla. 3d DCA 2006) (citing
 
 Wendt,
 
 822 So.2d at 1256). Second, the trial court must determine whether “sufficient minimum contacts exist between Florida and the defendant to satisfy due process requirements.”
 
 Id.
 
 at 364 (citing
 
 Wendt,
 
 822 So.2d at 1256);
 
 Venetian Salami,
 
 554 So.2d at 502. The plaintiff bears the initial burden of proving that personal jurisdiction exists; however, if a non-resident defendant raises a meritorious defense through affidavits, the burden shifts back to the plaintiff, unless the defendant’s affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.
 
 See Radcliffe v. Gyves,
 
 902 So.2d 968, 970-71 (Fla. 4th DCA 2005);
 
 see also Acquadro v. Bergeron,
 
 851 So.2d 665 (Fla.2003).
 

 Section 48.193, Florida Statutes (2007) provides, in pertinent part, as follows:
 

 Acts subjecting person to jurisdiction of courts of state.—
 

 (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
 

 (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
 

 (Emphasis added).
 

 We have previously held that “[although the term ‘arising from’ does not mean proximately caused by, it does require direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiffs’ cause of action and the defendants’ business activity in the state.”
 
 Gadea v. Star Cruises, Ltd.,
 
 949 So.2d 1143, 1149 (Fla. 3d DCA 2007) (quoting
 
 Nw. Aircraft Capital Corp. v. Stewart,
 
 842 So.2d 190, 195 (Fla. 5th DCA 2003)) (citations omitted). Moreover, the “term ‘business venture’ is generally applied to one subject matter or undertaking while ‘business’ is broader in scope denoting a variety of subjects, transactions or undertakings.”
 
 Suffolk Fed. Credit Union v. Cont’l Ins. Co.,
 
 664 So.2d 1153, 1154 (Fla. 3d DCA 1995) (quoting
 
 Matthews v. Matthews,
 
 122 So.2d 571, 573 (Fla. 2d DCA 1960)).
 

 The trial court granted the motion to dismiss as to the Campana Estate and
 
 *843
 
 NTP, but the order is silent as to why personal jurisdiction was not exercised over these two defendants. Although the Defendants presented sworn declarations purportedly demonstrating their lack of “[ojperating, conducting, engaging in, or carrying on a business or business venture” in Florida, the Plaintiffs have likewise produced numerous sworn declarations both from themselves and from other parties not named in the lawsuit, alleging involvement by the Defendants, each to varying degrees, in Telefind’s Florida operations or work in the development of the high speed protocol and WET.
 

 With respect to the Campana Estate, the Plaintiffs’ claims include breach of fiduciary duty, promissory estoppel, and unjust enrichment which clearly bear a substantial connection to the work allegedly performed by Campana for Telefmd and the technology developed as a result. The allegations of the Complaint and the various declarations filed by the Plaintiffs set forth that it was the long-standing business relationship of Campana and other Defendants with Andros and Telefind that allowed them to develop the trust necessary to be in a position to obtain control over the WET patents. Though the specific facts are disputed by the parties, the allegations in the Complaint and the declarations submitted by the Plaintiffs satisfy the first step of the inquiry.
 

 In determining whether sufficient minimum contacts exist, it is important to note that “[tjhe assessment of minimum contacts is fact-specific and must necessarily be tailored to the circumstances of each case.”
 
 Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
 
 84 F.3d 560, 570 (2d Cir.1996). Additionally, “in order for a state to exercise jurisdiction over a defendant in satisfaction with the fourteenth amendment’s due process requirements, the defendant’s conduct and connection with the forum state must be such that it ‘should reasonably anticipate being haled into court there.’”
 
 Blumberg,
 
 922 So.2d at 365 (quoting
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In order for a defendant to “reasonably anticipate such litigation in the forum state ‘it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.’ ”
 
 Id.
 
 (quoting
 
 deMco Techs., Inc. v. C.S. Engineered Castings, Inc.,
 
 769 So.2d 1128, 1131 (Fla. 3d DCA 2000)). Based upon the Complaint and the declarations in the record, Campana’s activities in Florida relating to Andros, Telefind, and the WET patents were sufficient such that he had “purposefully availed [himself] of the privilege of conducting activities within” Florida. Moreover, because of the nature and extent of his activities, Campana could have reasonably anticipated being haled into a Florida court.
 

 The claims against NTP in the Complaint include unjust enrichment and civil conspiracy. While NTP filed a sworn declaration regarding its lack of contact with Florida, the record contains documents filed under seal supporting the assertions in the Plaintiffs’ brief that NTP was soliciting business relating to the WET patents from at least one Florida corporation and licensed and received licensing proceeds from a foreign corporation doing business in Florida. The allegations of the Complaint combined with the documents in the record are sufficient to warrant the application of Florida’s long-arm statute.
 

 In the underlying suit, the Plaintiffs are seeking “disgorgement of all benefits obtained by Defendants associated
 
 *844
 
 with the Wireless Email Technology and the Wireless Email Patents.” Accordingly, by engaging in the activities revealed in the sealed documents, NTP has availed itself of the privilege of doing business in Florida and could have reasonably anticipated being haled into Florida courts. Moreover, though it is undisputed that NTP is a Virginia corporation with no offices in Florida, several of the controlling shareholders, including Stout, White, and Wright have connections to the State of Florida as demonstrated by the various declarations filed by the Plaintiffs and remain defendants in the underlying lawsuit.
 

 Based upon the foregoing, we reverse the portion of the trial court’s order granting the motion to dismiss for lack of personal jurisdiction as to the Campana Estate and NTP. We affirm on all other points.
 

 Affirmed in part, reversed in part, and remanded.
 

 [1]
 

 . Joletta Lampos was Thomas J. Campana, Jr.'s assistant during times relevant to the allegations in the Plaintiffs’ second amended complaint and eventually became his wife and heir.
 

 [2]
 

 . The trial court's order on the motion to dismiss for failure to state a cause of action dismissed the fraud and civil conspiracy counts as well as the count against William White for knowing participation in an agent’s breach of fiduciary duty. Upon a subsequent motion for clarification by the Defendants and Plaintiffs’ motion for leave to amend, the trial court clarified that the fraud count was dismissed without prejudice because the Plaintiffs failed to plead sufficient elements for that cause of action, and accordingly, the conspiracy claim was also dismissed because the underlying fraud claim was improperly pled. The trial court further granted the Plaintiffs’ motion for leave to file an amended complaint and provided the Defendants "fifteen (15) days from the date of this Order within which to file their response to the Third Amended Complaint.” However, the Third Amended Complaint is not in the record before us.