DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAHER AEROSPACE SA,**
Appellant,

v.

**AARON BLACKFORD, SHELBY BENNETT,** individually, and as the Personal Representative of the **ESTATE OF ZACHARIAH EUGENE BENNETT, LORI LOWE,** individually, and as the Personal Representative of the **ESTATE OF JOHN LOWE,** and **NICOLE SEGO,** individually, and as the Personal Representative of the **ESTATE OF NEIL A. SEGO,**
Appellees.

No. 4D2024-2453

[June 4, 2025]

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case Nos. CACE21-016843; CACE21-016962; CACE21-017098; and CACE21-017101.

Christopher E. Knight, Helaine Goodner, and Christopher B. Smith of Fowler White Burnett, Miami, and Joseph J. Ortego and Erik A. Goergen of Nixon Peabody LLP, New York, NY, for appellant.

Julie H. Littky-Rubin of Clark, Fountain, Littky-Rubin & Whitman LLP, Palm Beach Gardens, for appellees.

WARNER, J.

Daher Aerospace SA ("French Daher"), a French aircraft manufacturer, appeals an order denying its motion to dismiss a products liability action for lack of personal jurisdiction. While the court found jurisdiction over French Daher under section 48.193(1)(a)1., Florida Statutes (2021), allowing jurisdiction against a non-resident in an action arising out of the operation of a business in Florida, we conclude that no connexity existed between French Daher's business ties to Florida and the appellees' products liability cause of action for defective design and manufacture of an aircraft that crashed in Michigan. We reverse.

## Background

In 2003, Socata SA, a French company and the predecessor to French Daher, was engaged in the design, manufacture, and sale of aircraft in France. It sold the TBM aircraft involved in this case to Avex, Inc., a California-based independent distributor of TBM aircraft in the United States. The sales agreement specified that the aircraft would be delivered in France, and title and risk of loss would pass to the buyer at that point. However, the seller would insure the aircraft for its international ferry flight to the United States, specifically to Florida, where the buyer would then pilot it to California. The bill of sale filed with the Federal Aviation Administration was signed while the aircraft was in France. At some point after the sales contract had been executed, Avex wired the purchase price to a U.S. bank account, and then those funds were immediately transferred to France.

The ferry flight ended in Florida, where Socata Aircraft, Inc., a Florida corporation, was located. Socata Aircraft was a predecessor to Daher Aircraft, Inc. ("Florida Daher"), and both corporations were located in Florida. Socata Aircraft did maintenance on Socata airplanes and inspected the aircraft after its ferry flight. Socata Aircraft did not do any maintenance on the subject aircraft, and the aircraft was flown to California.

Fast forward eighteen years, and the aircraft was based in Muncie, Indiana. Plaintiffs (Aaron Blackford, Zechariah Bennett, John Lowe, and Neil Sego) chartered a flight on the aircraft from Indiana to Michigan for a work assignment. None of the passengers were Florida residents. The aircraft crashed when landing in Michigan. The pilot and all the passengers, except Blackford, died.

Blackford and the personal representatives of the other passengers' estates filed products liability actions in Broward circuit court against French Daher and two affiliated entities (Daher Aircraft, Inc. and Daher Aerospace, Inc.), as well as the engine manufacturer (Pratt). Plaintiffs alleged strict liability and negligence counts, claiming that the aircraft was defective and suffered engine failure. The complaint alleged that collectively the "Daher defendants" introduced a defective product into the stream of commerce. The complaint further alleged jurisdiction over French Daher based upon section 48.193(1)(a)1. The plaintiffs also filed tort actions in Michigan against companies involved in the piloting, servicing, and ownership of the aircraft. None of the Daher defendants are named in the Michigan case.

Only French Daher challenged the court's jurisdiction. In its motion to dismiss for lack of jurisdiction, French Daher contended that it did not do business in Florida, and the aircraft was designed, manufactured, and delivered in France. French Daher also did not service the aircraft in Florida.

French Daher argued that Florida lacked general jurisdiction over it, and no specific jurisdiction existed under the long-arm statute due to the lack of "connexity," because plaintiffs' claims did not arise from French Daher's alleged activities in Florida.

Plaintiffs responded with considerable evidence of French Daher's Florida contacts, including the use of U.S. trademarks and interlocking officers and directors, as French Daher and Florida Daher were sister corporations under a French parent company. However, plaintiffs conceded that they had asserted only specific personal jurisdiction over French Daher under section 48.193(1)(a)1. Plaintiffs had not asserted general jurisdiction.

After a lengthy evidentiary hearing including witness testimony and voluminous documents, the trial court denied the motion to dismiss for lack of jurisdiction. The order explained that plaintiffs had conceded they had not shown sufficiently pervasive contacts for general jurisdiction. Nevertheless, the order focused on French Daher's contacts with its sister corporation, Daher Aircraft, in Florida. The trial court agreed with plaintiffs that French Daher conducted business in Florida through Florida Daher, which had acted as French Daher's agent in the United States. French Daher had advertised that it has its "U.S. headquarters" and service center in Pompano Beach, where Florida Daher distributes parts and acts as French Daher's agent for U.S. sales.

The trial court found that Florida Daher had acted as Socata SA's agent in the aircraft's sale in 2003. The payment was transmitted through Florida Daher, and Florida Daher had serviced the aircraft in Florida when it arrived. Florida Daher has other substantial contacts with Florida, such as a partnership with a company to provide pilot training in Orlando, Florida. The Daher brand is a major sponsor of an annual airshow in Florida, where it displays and markets its aircraft.

In analyzing whether the plaintiffs had shown specific personal jurisdiction, the trial court made only two statements. First, the court found that a sufficient connection with Florida existed, reciting a portion of section 48.193(1)(a)1.:

The Plaintiffs also allege a direct "affiliation, nexus or substantial connection between [French Daher] and Florida, and that the defendant "personally or through an agent" committed "any cause of action arising from" its or its agent's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Plaintiff's jurisdictional allegations make a prima facie case that the Court has jurisdiction over [French Daher] through its own actions or those of its agent.

Then in its analysis of minimum contacts, the trial court stated:

When analyzing specific personal jurisdiction, the analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.* citing *Keeton v Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). For specific personal jurisdiction to be appropriate, "the defendant's suit-related conduct must create a substantial connection with the forum State," and the connection must arise out of the defendant's own activities, not those of the plaintiff or a third party.

Finally, the trial court gave some examples of relation to the cause of action as follows:

[S]ome examples showing of how [French Daher's] contacts were related to the Plaintiffs' cause of action, comes from [French Daher] taking responsibility for delivering the aircraft to Florida while it bore the risk of loss and its business ventures, trademark use, and its marketing, sale and distribution of other aircraft in Florida of the same make and model as the accident aircraft.

The court also noted that French Daher had furnished at least twenty replacement parts for the aircraft through Florida Daher. The record does not show when those parts were furnished or for what reason.

From this order denying French Daher's motion to dismiss for lack of jurisdiction, this appeal is taken.

## Analysis

On appeal of a motion to dismiss for lack of personal jurisdiction, we review legal rulings de novo and defer to the trial court on findings of fact

4

supported by competent substantial evidence. *Int'l Univ. of Health Scis. Ltd., Inc. v. Abeles*, 299 So. 3d 405, 408 (Fla. 4th DCA 2020). The party who invokes the long-arm statute carries the burden of presenting a situation that clearly justifies the statute's application. *Lyster v. Round*, 276 So. 2d 186, 188 (Fla. 1st DCA 1973); *see also Seabra v. Int'l Specialty Imps., Inc.*, 869 So. 2d 732, 733 (Fla. 4th DCA 2004) ("[C]ourts are required to strictly construe the long-arm statute.").

*Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), sets forth the procedure which courts must apply to determine whether the court may exercise personal jurisdiction over a defendant. We explained that procedure in *Rossocorsa S.r.l. v. Romanelli*, 325 So. 3d 869 (Fla. 4th DCA 2021):

> First, the plaintiff must allege sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. If the long-arm statute applies, the second inquiry is whether sufficient minimum contacts are demonstrated to satisfy due process requirements.

*Id.* at 870–71 (internal citation omitted).

Plaintiffs rely on the long-arm statute provision authorizing jurisdiction over a non-resident where the cause of action arises from the non-resident defendant's operation of a business venture in this state:

> **48.193  Acts subjecting person to jurisdiction of courts of state**
>
> (1)(a)  A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action *arising from* any of the following acts:
>
> 1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

§ 48.193(1)(a)1., Fla. Stat. (2018) (emphasis added).

French Daher argues that plaintiffs failed to establish "connexity" between Florida and their cause of action as section 48.193(1)(a)1. requires. The statute's "dual requirements—that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity—are known as the statute's connexity requirement. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). To establish connexity, plaintiffs must show that its claims "arose from" the business that the predecessor (Socata SA) conducted in Florida. *Wells Fargo Equip. Fin., Inc. v. Bacjet, LLC*, 221 So. 3d 671, 675 (Fla. 4th DCA 2017) (quoting *Ferguson v. Est. of Campana*, 47 So. 3d 838, 842 (Fla. 3d DCA 2010)) ("For a plaintiff's claim to arise from the defendant's actions, there must be a 'direct affiliation, nexus, or substantial connection' between the basis for the plaintiff's claim and the defendant's activity in the state.").

Plaintiffs' causes of action are for strict liability and negligence in the design and manufacture of the aircraft which crashed in Michigan. None of those causes of action involve Florida or the connection that French Daher may have with Florida. The aircraft was designed and manufactured in France. The sales agreement stated that delivery and transfer of title occurred in France. The agreement specifically stated that delivery and acceptance would occur at the seller's facility, which the agreement stated was in France. The buyer was responsible for all import taxes or other taxes imposed by the federal government. The trial court did not make any express finding that the aircraft was sold in Florida, and the evidence would not support such a finding. While the court found that Florida Daher was the agent for delivery, and the funds for the purchase price were wired to Florida Daher's account which was then sent immediately to France, the court's finding as to delivery contradicts the contract's express terms.

Even if the aircraft had been delivered in Florida by French Daher's predecessor in 2003, this would still not show connexity to the causes of action arising from the 2019 Michigan accident. As noted before, those causes of action are based upon the aircraft's design and manufacture, not on any activity occurring in Florida.

Lack of specific jurisdiction over French Daher is supported by *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019), which involved similar facts. In *Hinkle*, the plaintiffs were injured in a plane crash in South Carolina. *Id.* at 547. The defendant company manufactured and sold the plane in Minnesota to Hinkle, who lived in Florida. *Id.* at 548. Plaintiffs sued the manufacturer, a Wisconsin company, for strict liability and negligence in Florida alleging, under the long-arm statute, that the

manufacturer did business in Florida. *Id.* at 547. The trial court dismissed for lack of jurisdiction. *Id.* Although the manufacturer had a large presence in Florida, the causes of action did not arise out of the manufacturer's business in Florida. *Id.* The Eleventh Circuit affirmed and agreed that the manufacturer's contacts with Florida were unrelated to the causes of action. The court noted that while the manufacturer had a registered agent and a sales representative in Florida, Hinkle had not bought the aircraft from that sales representative. Similarly, while the manufacturer's executives had attended a Florida trade show, Hinkle had not attended that trade show. The court concluded that Hinkle's causes of action did not arise out of the manufacturer's business conduct in Florida, as the manufacturer's contacts with the Florida did not establish the necessary connexity. *Id.* at 549-50.

In this case, substantial connections exist between French Daher and Florida Daher, but that does not prove connexity to the plaintiffs' cause of action. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty*, 582 U.S. 255 (2017), rejected such a "sliding scale" approach to specific jurisdiction.

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear* [*Dunlop Tires Operations, S.A. v. Brown*], 564 U.S. [915], at 919, 131 S. Ct. 2846 [(2011)] (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. *See id.*, at 931, n. 6, 131 S. Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

*Id.* at 264 (alterations in original). "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Id.*

Regardless of how much business French Daher conducts in Florida, in order to invoke specific jurisdiction, the claims must arise from that business activity. The fact that French Daher flew and insured the ferry flight and serviced the aircraft at Florida Daher before being flown to California does not create a substantial connection with the plaintiffs' product liability claims. Florida was merely an interim stop during the transfer. The claims do not arise from anything occurring in Florida

during the interim stop. Likewise, the payment transmittal through Florida Daher is insufficient. The alleged connections are tangential.

Plaintiffs have also pointed to repairs made to aircraft in Indiana in 2019, a few months before the accident. The Indiana authorized service center contacted Florida Daher, which in turn contacted French Daher for technical assistance, per the normal procedure. This contact, however, occurred in 2019, and plaintiffs show no connection between these events and their products liability action. In any event, the repairs were made in Indiana. This does not establish a sufficient connection to Florida.

The trial court pointed to delivery in Florida, which we have already disposed of, as well as trademark and marketing in Florida. While these occurrences may show French Daher's minimum contacts with Florida, these occurrences do not show connexity to the causes of action alleged. That the Daher brand used its trademark in Florida is insufficient for connexity. *Schumacher Grp. of Del., Inc. v. Dictan*, 327 So. 3d 404, 409–10 (Fla. 3d DCA 2021) (holding that an affiliate's use of a parent company's trademarks did not establish doing business in Florida).

> The purported connexity to Florida must relate to the actual tort alleged, in this case, the tort of strict liability as to the manufacture or installation of the davits. None of the acts related to the alleged tort occurred in Florida. Neither Davit DE's alleged negligence in the performance of the separate inspection contract nor its alleged misrepresentations, directed to NCL in Florida regarding the fitness of the davits, relate to a strict liability claim for the design, manufacture, or installation of davits in Germany. Because Ms. Carpio failed to connect her cause of action for strict liability to any activity that took place in Florida, it fails to satisfy the connexity requirement and Davit DE's motion should have been granted as to this count.

*D-I Davit Int'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 201–02 (Fla. 3d DCA 2022).

## Conclusion

Plaintiffs had the burden of showing specific personal jurisdiction through the application of section 48.193(1)(a)1., Florida Statutes (2021). The accident, involving non-residents of Florida, occurred in Michigan. The plaintiffs sued French Daher for products liability in the aircraft's design and manufacture in France. While Plaintiffs may have shown

French Daher to have substantial connections to Florida, they did not show that these connections were linked to the alleged causes of action. As the long-arm statute must be strictly construed, we conclude that the court erred in denying French Daher's motion to dismiss for lack of jurisdiction. We thus reverse and remand for entry of an order of dismissal as to the corporation.

*Reversed and remanded.*

GROSS, J., concurs.
ARTAU, J., dissents with opinion.

ARTAU, J., dissenting.

I respectfully dissent because the trial court's findings of fact sufficiently support the conclusions that (1) Daher Aerospace SA's ("French Daher") business relations with Daher Aircraft Inc. ("Florida Daher") subjected French Daher to jurisdiction in Florida under Florida's long-arm statute (statutory prong) and (2) the exercise of personal jurisdiction by a Florida court over French Daher is constitutional (constitutional prong).

## Statutory Prong

As the trial court found, French Daher "provided technical assistance for the repair of *the accident aircraft* through [Florida Daher] *in Florida*" and "furnished at least 20 replacement parts for *the accident aircraft* through [Florida Daher] *in Florida*[,]" some of which "were installed *on the accident aircraft in Florida.*" (Emphasis added). Thus, these factual findings indicate that the causes of action, alleging liability under both negligence and strict liability principles for defective design, manufacture, and *maintenance* of the accident aircraft, "aris[e] from" French Daher "[o]perating, conducting, engaging in, or carrying on a business or business venture in" Florida. *See* § 48.193(1)(a)1., Fla. Stat. (2018). Therefore, French Daher subjected itself to jurisdiction in Florida under Florida's long-arm statute.

## Constitutional Prong

Historically, "due process was usually understood to guarantee that only a court of competent jurisdiction could deprive a defendant of his life, liberty or property." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 379 (2021) (Gorsuch, J., concurring)). This meant that "a court's competency normally depended on the defendant's presence in, or consent

to, the sovereign's jurisdiction." *Id.* Then, "once a plaintiff was able to 'tag' the defendant with process in the jurisdiction, that State's courts were generally thought competent to render judgment on any claim against the defendant, whether it involved events inside or outside the State." *Id.*

Despite this, "the [Supreme] Court [later] began invoking the Due Process Clause to restrict the circumstances in which an out-of-state corporation could be deemed present." *Id.*

Thus, even though "whether the Due Process Clause allows a court to exercise jurisdiction over a defendant should be guided by historical common law principles[,]" current jurisdictional principles establish that "[t]here are two types of personal jurisdiction a court can constitutionally exercise over a defendant: (1) general jurisdiction and (2) specific jurisdiction." *Alexander v. Trump,* 404 So. 3d 425, 429-30 (Fla. 4th DCA 2025) (Artau, J., concurring) (first citing *Ford,* 592 U.S. at 384 (Gorsuch, J., concurring); and then citing *Daimler AG v. Bauman,* 571 U.S. 117, 126-27 (2014)).

Here, the exercise of personal jurisdiction over French Daher by a Florida court is constitutional because either general jurisdiction or, alternatively, specific jurisdiction can be established over French Daher.[1]

## General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tire Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "[T]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum" is *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952). *Goodyear,* 564 U.S. at 928 (quoting

---

[1] Even though the plaintiffs conceded general jurisdiction below, the evidence supports the conclusion that general jurisdiction can be established over French Daher. Thus, the "tipsy coachman" doctrine requires affirmance. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA,* 731 So. 2d 638, 645 (Fla. 1999) ("[T]he judgment of the trial court reached the district court clothed with a presumption in favor of its validity. Accordingly, if upon the pleadings and evidence before the trial court, there was *any* theory or principle of law which would support the trial court's judgment in favor of the plaintiffs, the district court *was obliged to affirm* that judgment." (emphasis modified) (quoting *Cohen v. Mohawk, Inc.,* 137 So. 2d 222, 225 (Fla. 1962))).

*Donahue v. Far E. Air Transp. Corp.*, 652 F.2d 1032, 1037 (D.C. Cir. 1981)).

In *Perkins*, the president and principal shareholder of a foreign corporation moved to Ohio while the Japanese occupied the Philippine Islands during World War II. 342 U.S. at 447. While in Ohio, the company's president set up an office there to run the company. *Id.* at 447-48. His specific actions in Ohio included storing company files in the Ohio office, "carr[ying] on there correspondence relating to the business of the company and to its employees[,]" opening bank accounts with Ohio banks to deposit the company's funds, and "supervis[ing] policies dealing with the rehabilitation of the corporation's properties in the Philippines[.]" *Id.* at 448.

Based on these actions, the Supreme Court held that the foreign corporation was subject to general jurisdiction in Ohio because the company's president "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* Indeed, "[h]e there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter[,]" and "[w]hile no mining properties in Ohio were owned or operated by the company, many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons." *Id.*

Similarly here, French Daher has "continuous and systematic" affiliations with Florida, thereby establishing general jurisdiction over French Daher.

TBM aircraft sales' worldwide head, Mr. Devilliers, works in Florida, as he is employed by Florida Daher, but "he *oversees* [*French Daher*] *employees in France.*" (Emphasis added). In fact, Mr. Devilliers has been included on attorney-client privileged communications for French Daher and has "acted or purported to act on behalf of [French Daher]" by "sign[ing] purchase orders and other legal documents on behalf of [French Daher]."

For example, "Mr. Devilliers personally sent a letter to the FAA regarding the accident aircraft's U.S. Registration *on behalf of* [*French Daher*] *in France* while *he was employed by* [*Florida Daher*] *in Florida and physically located here.*" (Emphasis added). This was merely one of the many other letters that Mr. Devilliers sent to the FAA about TBM aircraft on French Daher's behalf while in Florida and employed by Florida Daher. Indeed, Florida Daher's Pompano Beach address has been "utilized in

official FAA documents and communications interchangeably with various Daher entities when discussing TBM model aircraft *manufactured by* [*French Daher*]." (Emphasis added).

Moreover, French Daher even had a Florida-based employee of Florida Daher be French Daher's "agent" during "the investigation of this accident[,] which was conducted by the NTSB in the U.S."

Additionally, French Daher conducts repairs of U.S.-based TBM model aircraft in Florida through Florida Daher. French Daher and Florida Daher even "share a common toll-free 'hotline' phone number" for service in the United States, where the time of day dictates which company answers the calls.

And French Daher also contracts with a third-party to offer "'factory authorized' flight training" *in Florida*. This Florida-based flight training program was where the pilots of the accident aircraft were trained.

These facts establish that French Daher has the same type of "continuous and systematic" contacts with Florida that the foreign company in *Perkins* had with Ohio because French Daher routinely conducts business out of Florida and routinely uses Florida-based employees—including the worldwide head of TBM aircraft sales—to oversee and conduct its business operations. Therefore, general jurisdiction can be established.

### Specific Jurisdiction

Specific jurisdiction over French Daher can also be established under the conspiracy theory of jurisdiction.

The gist of the conspiracy theory of jurisdiction "is that acts of a co-conspirator performed in a forum state in furtherance of a conspiracy create sufficient minimum contacts to establish personal jurisdiction over a remote co-conspirator, even when that co-conspirator had no direct contacts with the forum state." *Trump*, 404 So. 3d at 430 (Artau, J., concurring) (quoting Naomi Price & Jason Jarvis, *Conspiracy Jurisdiction*, Stan. L. Rev. 403, 409 (2024)).

Thus, "acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy[,] and . . . personal jurisdiction over a nonresident co[-]conspirator may be exercised even absent sufficient personal minimum contacts with the forum if those contacts are supplied by another." *Id.* at 431 (quoting *Amersham Enters.,*

*Inc. v. Hakim-Daccah*, 333 So. 3d 289, 296 (Fla. 3d DCA 2022)).

A civil conspiracy exists when there is "[a]n agreement between two or more persons to commit an unlawful act that causes damage to a person or property." *Conspiracy*, Black's Law Dictionary (12th ed. 2024); *see also Dozier & Gay Paint Co, Inc. v. Dilley*, 518 So. 2d 946, 949 (Fla. 1st DCA 1988) ("The gist of an action for civil conspiracy is not the conspiracy itself, but the civil wrong done pursuant to the conspiracy which results in damage to the plaintiff.").

Here, the trial court's factual findings establish a conspiracy between French Daher and Florida Daher, allowing Florida Daher's contacts with Florida to be imputed to French Daher.

French Daher and Florida Daher work "'as a team' in the design, manufacture, and sale of the TBM line of aircraft." For example, "*when the accident aircraft* needed specialized technical attention, the service center . . . contacted [*Florida Daher*] *employees in Florida*, who then sought a technical solution *from* [*French Daher*] *in France*." (Emphasis added). French Daher then "provided technical assistance for the repair of *the accident aircraft through* [*Florida Daher*] *in Florida*." (Emphasis added). Indeed, French Daher "furnished at least 20 replacement parts *for the accident aircraft through* [*Florida Daher*] *in Florida*[,]" and "[a]t least some of those parts were installed *on the accident aircraft in Florida*." (Emphasis added).

Thus, French Daher and Florida Daher agreed to work in concert on the repairs, which are part of the alleged unlawful acts listed in the complaint. Therefore, sufficient facts establish that French Daher knowingly conspired with Florida Daher, a Florida resident co-defendant, to commit the alleged acts in Florida, thereby allowing Florida Daher's sufficient minimum contacts with Florida to be imputed to French Daher. *See Trump*, 404 So. 3d at 432 (Artau, J., concurring) ("[T]he conspiratorial contacts must be of the sort that a defendant 'should reasonably anticipate being haled into court' in the forum as a result of them." (quoting *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Group PLC*, 22 F.4th 103, 125 (2d Cir. 2021))). As such, specific jurisdiction can also be established.

## Conclusion

The trial court's factual findings establish that (1) French Daher's actions subjected itself to jurisdiction under Florida's long-arm statute and (2) the exercise of personal jurisdiction by a Florida court over French Daher is indeed constitutional because either general or specific

13

jurisdiction can be established.  Therefore, I respectfully dissent and would instead affirm the trial court's judgment.

* * *

***Not final until disposition of timely filed motion for rehearing.***